UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:12-cv-00089-JHM**

**ARMSTRONG COAL COMPANY, INC.**                                                    **PLAINTIFF**

v.

**GEORGE V. BLACKBURN,**
**JAMES CUNNINGHAM; AND**
**DEBORAH CUNNINGHAM**                                                                     **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants George V. Blackburn, James Cunningham, and Deborah Cunningham's motion to dismiss [DN 11]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court **DENIES** the Defendants' motion.

### I. BACKGROUND

In October of 2000, George Blackburn, James Cunningham and Deborah Cunningham ("Defendants") acquired land located in Ohio County, Kentucky. Defendant George Blackburn requested a survey be made of the property in September of 2008, which was recorded on October 8, 2008. The 2008 survey shows 94.368 acres of land, designated as 'Tract I' and 'Tract II'. In February of 2010 a second survey was made of the land at the request of Defendant Blackburn that included Tract I and Tract II, but additionally depicted 'Tract III', which is the 38.044 acres at issue in this case. This second survey was recorded February 19, 2010.

Armstrong Coal Company, Inc. ("Plaintiff") purchased surface property from Cyprus Creek Land Company by Special Warranty Deed on March 3, 2011, which was recorded May 6, 2011. Plaintiff purchased the land, composed of several tracts, for $1,433,916.50. After purchasing the land, Plaintiff became aware that Defendants may claim ownership to 38.044 acres of that land

("Tract III"). On August 6, 2012, Plaintiff filed this declaratory action asking the Court to determine the rightful owner of the real property at issue. Defendants filed a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(1) based on a lack of subject matter jurisdiction because the amount in controversy does not exceed $75,000.

### III. DISCUSSION

"[I]t is well established that the Declaratory Judgment Act ... is not an independent source of federal jurisdiction." Louisville and Nashville R. Co. v. Donovan, 713 F.2d 1243, 1245 (6th Cir. 1983). Therefore, before invoking the Declaratory Judgment Act, "the court must have jurisdiction already." Heydon v. MediaOne of Southeast Mich., Inc., 327 F.3d 466, 470 (6th Cir. 2003). Here, the Plaintiff asserts the Court has federal jurisdiction under 28 U.S.C. § 1332 which provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1).

Defendants have filed their motion to dismiss stating that the amount in controversy does not exceed $75,000. The Supreme Court has held that "[t]he rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). Under this test, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Id. at 289. Because "the plaintiff is the master of the claim, [h]e knows or should know whether his claim is within the statutory requirement as to amount,'" Gafford v. Gen. Elec. Co., 997 F.2d 150, 157 (6th Cir.1993)  (quoting St. Paul, 303 U.S. at 290) (abrogated on other grounds by Hertz Corp.

2

v. Friend, 559 U.S. 77 (2010)). According to the Sixth Circuit, "if a plaintiff brings an action in federal court and a defendant seeks dismissal on amount-in-controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith." Id. (citation omitted). To make a showing of bad faith, "the defendant [must] demonstrate [] to a legal certainty that the original claim was really for less than the amount-in-controversy requirement." Schultz v. Gen. R.V. Ctr., 512 F.3d 754, 756 (6th Cir. 2008) (quotation and internal markings omitted).

Defendants argue that the surface rights of the 38.044 acres at issue does not exceed the required amount in controversy of $75,000. In support of this argument, Defendants have submitted the affidavit of the Deputy PVA officer from Ohio County who states that the current tax assessed value of the property is $7,600.00, and the fair cash value is $38,044.00. (Defs.' Mot. to Dismiss 3 [DN 11-3].) Defendant George V. Blackburn also submitted an affidavit stating that he purchased 97 acres, including Tract III, in 2000 for $35,000.00. Defendants conclude that the disputed property (38.044 acres of the total 97 acres) had a value of $14,000 at that time. As this is a declaratory judgment action, where the plaintiff does not seek to recover any damages, Defendants reason that amount in controversy is only the value of the land at issue, which according to them is well below $75,000. (Id. [DN 11-3] (citing Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333 (1977)).]

In response, Plaintiff states that Defendant has provided no evidence of bad faith by Plaintiff in assessing the value of the property. Additionally, while Plaintiff agrees that the amount in controversy is measured by the value of the object of the litigation, it can also be measured by the losses that will result. (Pl's Resp. 6 [DN 12] (citing Hunt, 432 U.S. at 347).) The current tax

assessed value and the fair cash value do not give any consideration to the value of the use of the property by Plaintiff. Plaintiff processes mined coal in its facility in Ohio County. As part of that process, it generates a waste by-product called mixed refuse. The mixed refuse is then processed through a filter press which presses the mixed refuse into "filter cake." The land at issue, as a portion of a larger 200 acre tract, would be the refuse site where Plaintiff planned to dispose of the mixed refuse. According to Plaintiff, not only would it lose the purchase price of the property, it would also suffer losses which include: 1) a loss of an estimated 515,985 tons of coal because the loss of the 38.044 acres would sterilize certain seams of coal on the property; 2) due to the loss of the unique topography, Plaintiff would be forced to change its method of waste disposal from filter cake to injection of slurry into abandoned underground mines; 3) Plaintiff would lose the benefit of the investment of $5,000,000 in the filter presses purchased for the purpose of disposing filter cakes; and 4) the change in the disposal method would add a significant cost to Plaintiff. Plaintiff argues that the Defendants' sole argument is based only on the tax assessed value and fair cash value of the property without citing to any authority. However, Plaintiff has stated that it would suffer significant losses if it lost the ability to use the land and "'the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.'" (Pl.'s Resp. 6 [DN 12] (quoting Smith v. Nationwide Prop. & Cas. Ins. Co., 505 F.3d 401, 407 (6th Cir. 2007)).)

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt, 432 U.S. at 347. "The value of that right is measured by the losses that will follow" from the loss of that object. Id. The Sixth Circuit has stated that "the amount in controversy should be determined 'from the perspective

4

of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'" Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbo, 129 Fed. Appx. 194, 195-95 (6th Cir. 2005) (quoting Buckeye Recyclers v. CHEP USA, 228 F.Supp.2d 818, 821 (S.D. Ohio Aug. 21, 2002)).

The Complaint is seeking a declaration of Plaintiff's rights to lawfully and properly own, possess, and hold in fee simple title of a certain piece of surface property. While Defendants state that the surface rights of the property do not come close to meeting the required jurisdictional value of $75,000, they do not take into consideration the value of the property to the Plaintiff. In his affidavit, the Executive Vice President of Business Development for Plaintiff, David Cobb, stated that Plaintiff paid approximately $1,850 per acre to Cyprus Creek, which means they paid a little over $70,000 for the 38.044 acres at issue. The economic value of Plaintiff's rights to the property extends beyond the purchase price of the 38.044 acres in question. Plaintiff purchased the 38.044 acres as part of a larger tract of land for a certain purpose. Plaintiff has alleged that without the acreage at issue, it can not use the rest of the land it purchased from Cyprus Creek as originally intended, causing Plaintiff well over the required amount of $75,000. Defendants have relied only on the tax assessed value and the value they allegedly purchased the land for in 2000. The focus on the loss from the perspective of Defendants is improper. (See Smith, 505 F.3d at 408; Woodmen of the World, 129 Fed. Appx. at 196; Buckeye Recyclers, 228 F.Supp. 2d at 821 ("After considering the existing cases and the reasoning underlying the competing theories, as well as Sixth Circuit precedent . . . this Court held that the better approach is to determine the amount in controversy from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.")). Furthermore, Defendants have not provided any evidence that Plaintiff's alleged amount of controversy was made in bad faith. Therefore, the Court holds that dismissal due to lack of

subject matter jurisdiction pursuant to 28 U.S.C. § 1332 is improper.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendants' motion to dismiss [DN 11] is **DENIED**.

                                              **Joseph H. McKinley, Jr., Chief Judge**
                                                  **United States District Court**

February 6, 2013

cc: counsel of record