UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:12CV-89-JHM

ARMSTRONG COAL COMPANY INC.,                                   PLAINTIFF

VS.

GEORGE V. BLACKBURN, JAMES
CUNNINGHAM, and DEBORAH
CUNNINGHAM                                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Armstrong Coal Company's ("Armstrong") Motion for Summary Judgment [DN 41] and Motion to Exclude Testimony from Keith Biggerstaff [DN 42]. Fully briefed, these matters are ripe for review.

## I. BACKGROUND

This case involves a dispute over a piece of land claimed by two parties, Armstrong and Blackburn.[1] The disputed land, located in Ohio County, Kentucky, lies between tracts of land owned by the Plaintiff and Defendants in this case. Defendants obtained their property, which lies to the west of the disputed property, by a deed in October of 2000, which describes three contiguous tracts of land known as the Price/Cox Property. Plaintiff obtained its property, situated east of the disputed land, by deed from the Cyprus Creek Land Company in March of 2011.

Blackburn first asserted a right to the disputed property following a 2008 survey of his land conducted by Keith Biggerstaff. The survey, based solely on the Price/Cox deed, identified two parcels of land, Tract I and Tract II, as belonging to Defendants. [2008 Survey, DN 1-3, at

---

[1] For the purposes of this case, Defendants will be collectively identified with George Blackburn even though the other two defendants own the property as joint tenants.

2]. Tract I and Tract II consist of 58.648 acres and 35.720 acres, respectively. Id. After receiving the completed survey of the land, Blackburn contacted Biggerstaff to inform him that he believed that the eastern boundary of his property extended beyond what was shown on the 2008 survey. At Blackburn's insistence, Biggerstaff surveyed the property again in 2010 and this time the survey included the area that Blackburn said belonged to him. Biggerstaff labeled this area Tract III on the new survey and provided a note concerning the tracts of land depicted in the plat. The note stated as follows:

> THE ABOVE TRACT I AND TRACT II ARE PART OF THE THREE COMBINED TRACTS (LESS WHAT HAS BEEN SOLD OFF) TO GEORGE BLACKBURN RECORDED IN DEED BOOK 327, PAGE 389 AS OF RECORD IN THE OFFICE OF THE OHIO COUNTY COURT CLERK.
>
> TRACT III IS CLAIMED BY GEORGE BLACKBURN AS PART OF THE ABOVE TWO TRACTS, NO DEED FOUND.

[2010 Survey, DN 1-4, at 2]. Blackburn subsequently recorded the survey with the Ohio County Clerk's Office.

Plaintiff Armstrong's special warranty deed obtained from Cyprus Creek details an acquisition of multiple tracts of land in Ohio County. At issue in this case is the tract identified as "Tract 17" in the deed. [Special Warranty Deed, DN 1-5, at 5]. The deed obtained from Cyprus Creek does not provide a legal description of the land other than the acreage for each tract. Following the purchase of the land from Cyprus Creek, Armstrong's land manager, Dennie Grider, visited the disputed property and noticed survey pins and a hunting stand around the area. After discovering these items on the property, Grider proceeded to check the public records and found the 2010 plat showing Tract III. As a result, Plaintiff Armstrong commenced this action on August 8, 2012 for the purpose of seeking a declaration of ownership as to Tract III.

For the purposes of this litigation, Armstrong retained two experts, Duncan Pitchford and Ronald Bacon. Pitchford prepared Plaintiff's title examination which shows an unbroken chain of title back to two land patents. Based on the title search, Pitchford opined that "[a]t no point in the record chain of title do Mr. Blackburn, or any of his predecessors in title, have any record claim to [Tract III]." [Pitchford Report, DN 41-21, at 4]. Additionally, Pitchford explained geographic contours of Tract III as follows:

> The Property lies along a line commonly referred to in the records of the Ohio County Clerk as the "Travis" line or "Travis's line", but in actuality, is the "traverse line" lying between two original land patents granted by the Commonwealth of Virginia for contributions to the Revolutionary War effort. The Addington family's chain of title carries forward, uninterrupted, from a division of one of these original land patents, a 9270 acre survey for Jacob Lewis dated November 8, 1785, with the [northwest][2] corner of the Addington Property being the northeasterly corner of the original land patent; the dividing line between the Addington Property the balance of the property owned by Blackburn, et al. (shown as Tracts I and II on the Plat) being the traverse line.

Id. Defendant's title expert, Septtimous Taylor, similarly concluded that "the west boundary of the Plaintiff's (Addington's) tract is the 'Travis or Traverse line' . . . ." [Taylor Report, DN 47-26, at 5].

Plaintiff Armstrong retained its second expert, Ronald Bacon, to opine concerning the physical location of the "traverse line." Although Bacon did not actually conduct a survey of Armstrong's property, he examined the area in dispute and used old maps of the area to determine where the "traverse line" would be today. From this examination, he found evidence of monuments, including a large stone and an old fence, which he believes correspond to physical markers of the "traverse line" described in the older deeds for Armstrong's property. Bacon also noted that these monuments which show the location of the "traverse line" were found within what he believed to be the pins placed by Biggerstaff during the 2008 survey of the

---

[2] Pitchford confirmed in his deposition that this was a typographical error in his report.

3

Defendant's property. Bacon asserted that the location of the pins further evidence the fact that Biggerstaff had correctly identified Defendants' boundary in the 2008 survey.

Biggerstaff, who was later retained as an expert for Defendants, reviewed Bacon's report on the boundary lines. While Biggerstaff maintains that the Price/Cox deed clearly only conveyed Tracts I and II to Blackburn, he found some problems with the methodology and assumptions made by Bacon. Specifically, Biggerstaff stated that "Mr. Bacon errored (*sic*) when he ignored the natural monuments (<u>on the East side of a caney ridge</u>) and chose a point in the Matanzas Road (West side of said ridge) and used two different bearing rotations in locating the West boundary of the 9728 acre tract." [Biggerstaff Report, DN 47-25, at 5]. In addition to commenting on the work of Bacon, Biggerstaff used GPS data and the maps inspected by Bacon to find where he thought the boundary line would be between the properties. He stated the following:

> "[w]hile it would appear from the above, that I would conclude that the East line of George Blackburn's TRACT III is in or close to the West line of the 9728 acre survey of 1785; the precise line could only be determine by investigating the remainder of the old fence line running North to the East side of a caney ridge as well as lines to the South."

Id.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts

demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

### III. ANALYSIS

Plaintiff insists it is entitled to summary judgment primarily because it has shown clear title to the property which it owns. However, as Plaintiff states, "this is a boundary line dispute." The Defendant correctly points out that the real issue in the case is the location of the common boundary line between property that the Plaintiff owns and the property the Defendants own.

In fact, both title experts, Pitchford and Taylor, agree that the "traverse line" is the boundary for the two properties and that it passes along the edge of Tract III. Of course, Pitchford concludes that the western boundary of Tract III is Armstrong's western boundary. Conversely, Taylor contends that the eastern boundary of Tract III is the eastern boundary of Blackburn's property.

As to the physical location of the "traverse line," both parties offer conflicting expert reports. Plaintiff's expert, Bacon, opines that the previous survey of the property from 1785 and

the presence of certain monuments in the area support the theory that the "traverse line" aligns with the western boundary of Tract III. In response, Biggerstaff criticizes Bacon's methodology and comes to the conclusion that there is evidence that Blackburn's eastern boundary is actually close to the eastern boundary of Tract III. The expert reports clearly indicate there is a genuine issue of material fact as to the location of the "traverse line." Additionally, Defendants provide lay testimony concerning where certain monuments associated with the "traverse line" were previously located. This testimony may be relevant where there is some question about the difficulty in locating monuments. See Compton v. Howell, 2004-CA-002314-MR, 2006 WL 2988352 (Ky. App. Oct. 20, 2006) ("[W]hen a monument can not (*sic*) be definitely located, the position of the monument must be determined by other sources, including . . . the testimony of those familiar with the establishment of the boundaries.").

The Court concludes that there are genuine issues of fact as to the location of the boundary line which preclude summary judgment in favor of Plaintiff.

Plaintiff also seeks summary judgment on Defendants' alternative theory that they own Tract III by virtue of adverse possession. Plaintiff Armstrong offers evidence that the prior title holders for their property, Peabody Coal Company and Beaver Dam Coal Company, permitted individuals to enter their property for the purposes of hunting. [Peabody-KDFW Docs, DN 41-19]. As a result, Plaintiff alleges that Defendants cannot meet the requisite "hostile" element for an adverse possession claim. However, the record is not entirely clear on this issue and the Court declines at this time to grant summary judgment dismissing this alternative claim.

Plaintiff seeks to exclude the testimony of Defendants' expert, Keith Biggerstaff, alleging in part that his testimony does not meet the standards of Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)). In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. Kumho Tire Co., 526 U.S. at 147.

Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co., 526 U.S. at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted).

Plaintiff explicitly states that it does not challenge Biggerstaff's qualifications as a surveyor. Instead, Plaintiff contends that his work "represents a material compromise of Mr.

7

Biggerstaff's independent professional judgment as a Kentucky-licensed professional land surveyor." [Mot. to Exclude, DN 42-1, at 2]. Specifically, Plaintiff seeks to exclude Biggerstaff because it believes that he violated the code of conduct for professional land surveyors by conducting the 2010 survey and adding his seal to the document for it to be filed with the clerk's office.

While Plaintiff provides several interesting theories for excluding Biggerstaff, the Court denies its motion for two main reasons. First, Plaintiff cannot actually identify any ethical code that Biggerstaff violated. At best, Plaintiff has Biggerstaff admit to his reluctance to conducting another survey and has Bacon criticize the fact that Biggerstaff added his seal to the document. However, this falls significantly short of showing how Biggerstaff violated rules for professional surveyors. Thus, the Court need not address the cases in which a professional violated a code of conduct or ethics.

Second, Plaintiff's concern over adding the seal at the bottom of 2010 survey seems unfounded in light of the fact that Biggerstaff explicitly added a disclaimer to the survey, which said that Defendants' deed only supported their claims as to Tracts I and II. In other words, Biggerstaff's 2010 survey sufficiently delineated the difference between the tracts that are supported by the Price/Cox deed and the one that is not. Furthermore, the Court does not find that the 2010 survey is really at issue in terms of Biggerstaff's ability to testify as an expert in this case. Based on Biggerstaff's report and deposition, it is clear to the Court that his opinions are supported by his basis of knowledge and expertise as a surveyor. Also, Biggerstaff appears to be very candid in his assessment of the disputed property both before and after his retention as an expert. For these reasons, Plaintiff's motion is denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Armstrong Coal Company's ("Armstrong") Motion for Summary Judgment [DN 41] is **GRANTED** in part and **DENIED** in part. It is **GRANTED** as to Defendants' equitable estoppel claim. It is **DENIED** as to all other issues.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude Testimony from Keith Biggerstaff [DN 42] is **DENIED**.

*Joseph H. McKinley signature*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

September 3, 2014

cc: counsel of record